### WILLIAM H. MELONY'S APPEAL FROM PROBATE.

First Judicial District, Hartford, October Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Whether a given transaction is a loan or an advancement depends mainly upon intention, and that is purely a question of fact for the final determination of the trial court.

Inasmuch as a loan involves a contractual relation between two or more parties, it cannot be converted into an advancement at the will of one only.

In the present case a father, since deceased, had loaned money to his son, the recovery of which was apparently barred by the statute of limitations at the date of the father's death. In the distribution of his estate it was sought to charge the son's share with this money as an advancement. *Held* that declarations of the decedent to a third person, evincing an intention, unknown to the son, to treat the loan as an advancement, were irrelevant for that purpose.

Argued October 3d—decided November 7th, 1905.

APPEAL from orders of the Court of Probate for the district of Windham directing that certain sums of money, aggregating $1,970, be treated as advancements made by an intestate to his son William H. Melony, and be deducted from his share of the estate, taken by said son to the Superior Court in Windham County and tried to the court, *Case, J.;* facts found and judgment rendered reversing the action of the Court of Probate, and appeal by George W. Melony. *No error.*

*Charles E. Searls,* for the appellant (George W. Melony, administrator).

*Theodore M. Maltbie* and *Huber Clark,* with whom was *E. Frank Bugbee,* for the appellee (William H. Melony).

PRENTICE, J. From April, 1869, to November, 1877, Norman Melony let his son William H. Melony, who appealed from the action of the Court of Probate, have sums

of money aggregating $2,550. Notes were taken therefor which were twice consolidated and the accumulations of interest included. These notes were secured by mortgages of real estate. In May, 1878, the real estate thus mortgaged was conveyed by the son to the father, to be managed and sold by the latter for the son's benefit. In August, 1882, a sale was made and $3,000 over and above a first mortgage thereon realized. This amount the father indorsed upon the son's note, whose face amount purported to be $4,020, leaving a balance unpaid. No accounting for the use, income and profits of the property for the period during which the father held it was ever made, although requested by the son. In September, 1885, the son became indebted to the father in the sum of $100 as the result of a business transaction, and borrowed the further sum of $50. For this indebtedness the son gave his thirty day note payable at a bank. This note was never presented for payment, and no request was ever made by the father for the payment of the same, or of any balance due upon the prior note, or of any interest upon either of said notes, nor was any attempt made to collect either of said notes, or anything due thereon, from the dates they were given down to the day of Norman Melony's death in 1896. The two notes last described, the first bearing the indorsement referred to, were found among the deceased's papers, and the attempt is now made to charge the amounts thereof against William's distributive share of his father's estate as advancements made to him. The Court of Probate passed an order favorable to this contention. The Superior Court reversed and set aside that order.

The Superior Court found that the original transactions were all loans. We understand the reasons of appeal as presenting the claim that in so doing, and in not holding upon the evidence that they were advancements, there was error in law. "Questions of advancements are always questions of intention." *Johnson* v. *Belden*, 20 Conn. 322; *Meeker* v. *Meeker*, 16 id. 383; *Hart* v. *Chase*, 46 id. 207. In this case there are no facts from which a conclusive legal pre-

sumption of an intention to create an advancement arises. The question presented was purely one of fact, which the court has conclusively determined.

Upon the trial, George W. Melony, who was administrator and an heir at law, offered evidence of declarations made by Norman Melony to a third person some years subsequent to the original transactions between the father and his son William, as tending to show an intention on the father's part to treat the loans referred to as advancements to be deducted from William's share of his estate. This offer was accompanied by an admission " that no such intention was then, or afterwards, communicated to William, and that he was never a party to any such attempted change in the character of the original transaction." The evidence was thereupon, upon objection, excluded. The reasons of appeal impute error to this ruling. In the brief of counsel, in support of this contention, it is urged that the proffered evidence was admissible for the purpose of showing (1) Norman Melony's original intention to make advancements and not loans, and (2) a subsequent intention on his part to change what had been loans into advancements.

The first of these claims evidently was not presented to the trial court. The administrator, while he did not in his answer to the reasons of appeal admit that the original transactions were loans, did set up a change subsequently effectuated by the father, whereby what had been indebtedness became converted into an advancement. The offer of the rejected evidence was plainly made in support of this allegation. The terms of the offer and accompanying admission, when read in the light of what was said and what was not said, leave little room for doubt upon this point. The offer denominates the original transactions loans, and the admission unmistakably indicates that the administrator conceived himself engaged in an attempt to establish a change in a once existing status. This was the understanding, and we think the rightful understanding, of the trial court. Had the administrator desired the benefit of the evidence for the purpose now indicated, he should have made

that desire more plainly manifest. We have no occasion therefore to discuss the question of the admissibility of the evidence had it been offered for that purpose.

If the rejected evidence was theoretically admissible to establish a change of relation, either by virtue of § 705 of the General Statutes, or as admissions against interest, it was nevertheless immaterial and irrelevant, and therefore properly excluded. The offer made assumes the unsound proposition that a loan may by the creditor be converted into an advancement without the consent, past or present, of the debtor, and against his will. The relation of debtor and creditor created by a loan is a contractual one, involving the meeting of two minds. That relation may not in the nature of things be changed at the will of one only. The minds of the contracting parties must again meet at some time in order to create a new contractual status. The will of neither party can be overridden by the other. We are familiar with cases where loans are turned into gifts, and it has been held that advancements may be. *Sherwood* v. *Smith*, 23 Conn. 516 ; *Chapman* v. *Allen*, 56 id. 152. These cases, however, involve no exception to the general principle stated, that there must be a concurrence of minds. In all of them the new status is necessarily a better one for the donee, and his assent to the change of relation always appears at some point of time. His claim is the one which is always urged, never repudiated. By this very action assent enters into the situation and dissent disappears from it. The unwilling donee has not yet been discovered. When he is, it will be time to inquire whether even he can be compelled to take what he does not want and has never agreed to accept. This case presents the bald attempt to force upon a man, at the will of another, a contractual relation with that other which is injurious to his interests, to which he has never given his consent, express or implied, and against which he rebels. The law sanctions no such proceeding.

There is no error.

In this opinion the other judges concurred.